UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
FRANKFORT DIVISION
CASE NO. _____

COMMONWEALTH OF KENTUCKY,                    )
*ex rel*. MATTHEW G. BEVIN, GOVERNOR,        )
                                             )
SCOTT W. BRINKMAN, in his official capacity  )
as Acting Secretary of the CABINET           )
FOR HEALTH AND FAMILY SERVICES,              )
                                             )
STEPHEN P. MILLER, in his official capacity  )
as Commissioner of the DEPARTMENT            )
FOR MEDICAID SERVICES,                       )
                                             )
     Plaintiffs                   )
                                             )
     v.                           )
                                             )
RONNIE MAURICE STEWART, GLASSIE              )
MAE KASEY, LAKIN BRANHAM, SHANNA             )
BALLINGER, DAVE KOBERSMITH, WILLIAM          )
BENNETT, SHAWNA NICOLE McCOMAS,              )
ALEXA HATCHER, MICHAEL WOODS, SARA           )
WOODS, KIMBERLY WITHERS, KATELYN             )
ALLEN, AMANDA SPEARS, DAVID ROODE,           )
SHEILA MARLENE PENNEY, and QUENTON           )
RADFORD                                      )
                                             )
     Defendants.                  )

## **COMPLAINT**

The Commonwealth of Kentucky, *ex rel.* Matthew G. Bevin, Governor; Scott W.

Brinkman, in his official capacity as the Acting Secretary of the Cabinet for Health and

Family Services; and Stephen P. Miller, in his official capacity as the Commissioner of the

Department for Medicaid Services (together, the "Plaintiffs"), for their Complaint, state as follows:

<p style="text-align:center"><b><u>INTRODUCTION</u></b></p>

1.     Sixteen individuals, all of whom are Kentucky residents, have brought a putative class-action lawsuit in the United States District Court for the District of Columbia (the "D.C. Action"), claiming that the Commonwealth of Kentucky's Section 1115 Medicaid waiver, known as Kentucky HEALTH, violates the Social Security Act, the Administrative Procedure Act, and the United States Constitution. Although the Commonwealth of Kentucky developed Kentucky HEALTH, is currently implementing it, and will be the one enforcing it, those sixteen individuals opted *not* to sue the Commonwealth or any of its agencies or officials in the D.C. Action.

2.     The Commonwealth's voice obviously must be heard on this issue. Because of the Commonwealth's unique and compelling interests in enforcing Kentucky HEALTH, Governor Bevin, Secretary Brinkman, and Commissioner Miller bring this lawsuit against the same named parties who instituted the D.C. Action seeking a judicial declaration—*this time in Kentucky and with the Commonwealth as a party*—that Kentucky HEALTH is consistent with the Social Security Act, the Administrative Procedure Act, and the United States Constitution.

<p style="text-align:center"><b><u>JURISDICTION & VENUE</u></b></p>

3.     The Court has subject-matter jurisdiction over this matter under 28 U.S.C. § 1331 as it arises under the Constitution and laws of the United States. This declaratory judgment action is further authorized by 28 U.S.C. §§ 2201 and 2202.

<p style="text-align:center">2</p>

4.     The Court has personal jurisdiction over the Defendants because all of them reside in Kentucky.

5.     Venue is appropriate in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this action, namely the thousands of hours that the Commonwealth and its agencies spent developing Kentucky HEALTH, occurred in Frankfort, Kentucky. In addition, the implementation of Kentucky HEALTH is currently occurring in Frankfort, Kentucky. Venue also is appropriate under 28 U.S.C. § 1391(b)(1).

6.     Under Local Rule 3.2(a)(2)(A), the Frankfort Division of the Eastern District of Kentucky is the appropriate division for this action because a substantial part of the events giving rise to this action occurred in Frankfort, Kentucky, where Kentucky HEALTH was developed and is being implemented.

## PARTIES

7.     Matthew G. Bevin, who brings this action in his official capacity on behalf of the Commonwealth of Kentucky, is the Governor of Kentucky. Governor Bevin's office is located in Franklin County, Kentucky, at 700 Capital Avenue, Suite 100, Frankfort, Kentucky 40601.

8.     Scott W. Brinkman, who brings this action in his official capacity, is the Acting Secretary of the Cabinet for Health and Family Services. The Cabinet for Health and Family Services is the executive branch administrative agency that oversees Kentucky's Medicaid program. Secretary Brinkman's office is located in Franklin County, Kentucky, at 275 East Main Street, Frankfort, Kentucky 40621.

3

9.      Stephen P. Miller, who brings this action in his official capacity, is the Commissioner of the Department for Medicaid Services within the Cabinet for Health and Family Services. The Department for Medicaid Services administers Kentucky's Medicaid program, including the ongoing implementation of Kentucky HEALTH. Commissioner Miller's office is located in Franklin County, Kentucky, at 275 East Main Street, Frankfort, Kentucky 40621.

10.     Ronnie Maurice Stewart is one of the named plaintiffs in the D.C. Action. Although Mr. Stewart has brought suit in Washington, D.C., he resides at 1700 Jennifer Road, Apartment 25, Lexington, Kentucky 40505.

11.     Glassie Mae Kasey is one of the named plaintiffs in the D.C. Action. Although Ms. Kasey has brought suit in Washington, D.C., she resides at 5414 Robinwood Road, Louisville, Kentucky 40218.

12.     Lakin Branham is one of the named plaintiffs in the D.C. Action. Although Ms. Branham has brought suit in Washington, D.C., she resides at 29 Tie Yard Drive, Dwale, Kentucky 41621.

13.     Shanna Ballinger is one of the named plaintiffs in the D.C. Action. Although Ms. Ballinger has brought suit in Washington D.C., she resides at 1451 West Lincoln Trail Boulevard, Apartment 127, Radcliff, Kentucky 40160.

14.     Dave Kobersmith is one of the named plaintiffs in the D.C. Action. Although Mr. Kobersmith has brought suit in Washington, D.C., he resides at 105 Leslie Drive, Berea, Kentucky 40403.

15.     William Bennett is one of the named plaintiffs in the D.C. Action. Although Mr. Bennett has brought suit in Washington, D.C., he resides at 425 Race Street, Lexington, Kentucky 40508.

16.     Shawna Nicole McComas is one of the named plaintiffs in the D.C. Action. Although Ms. McComas has brought suit in Washington, D.C., she resides at 1053 Winburn Drive, Apartment 23, Lexington, Kentucky 40511.

17.     Alexa Hatcher is one of the named plaintiffs in the D.C. Action. Although Ms. Hatcher has brought suit in Washington, D.C., she resides at 1875 Bill Dedmon Road, Bowling Green, Kentucky 42101.

18.     Michael Woods is one of the named plaintiffs in the D.C. Action. Although Mr. Woods has brought suit in Washington, D.C., he resides at 11692 Main Street, Apartment 2, Martin, Kentucky 41649.

19.     Sara Woods is one of the named plaintiffs in the D.C. Action. Although Ms. Woods has brought suit in Washington, D.C., she resides at 11692 Main Street, Apartment 2, Martin, Kentucky 41649.

20.     Kimberly Withers is one of the named plaintiffs in the D.C. Action. Although Ms. Withers has brought suit in Washington, D.C., she resides at 2220 Devonport Drive, Apartment I38, Lexington, Kentucky 40504.

21.     Katelyn Allen is one of the named plaintiffs in the D.C. Action. Although Ms. Allen has brought suit in Washington, D.C., she resides at 12 West Adams Lane, Lot 26, Salyersville, Kentucky 41465.

22.     Amanda Spears is one of the named plaintiffs in the D.C. Action. Although Ms. Spears has brought suit in Washington, D.C., she resides at 1070 Jackson Road, Park Hill, Kentucky 41011.

23.     David Roode is one of the named plaintiffs in the D.C. Action. Although Mr. Roode has brought suit in Washington, D.C., he resides at 331 Montclair Avenue, Ludlow, Kentucky 41016.

24.     Sheila Marlene Penney is one of the named plaintiffs in the D.C. Action. Although Ms. Penney has brought suit in Washington, D.C., she resides at 5410 West Catherine Street, Apartment A, Louisville, Kentucky 40203.

25.     Quenton Radford is one of the named plaintiffs in the D.C. Action. Although Mr. Radford has brought suit in Washington, D.C., he resides at 2501 Montgomery Avenue, Ashland, Kentucky 41101.

## BACKGROUND

26.     Medicaid is an optional, collaborative program between the federal government and the states. This program, authorized by Title XIX of the Social Security Act, is designed to financially assist states in providing health care to specified low-income persons.

27.     The Commonwealth of Kentucky, like all other states, has chosen to participate in Medicaid.

28.     In 2010, Congress passed, and President Obama signed, the Patient Protection and Affordable Care Act ("Obamacare"), as amended by the Health Care and Education Reconciliation Act of 2010. As relevant here, Obamacare amended the

Medicaid Act to enable states, if they so choose, to expand their Medicaid coverage to include individuals who previously did not qualify for Medicaid (the "Medicaid expansion").

29.    In 2014, at the unilateral direction of then-Governor Steve Beshear, the Commonwealth of Kentucky began participating in the Medicaid expansion. Generally speaking, this meant that Kentucky expanded Medicaid eligibility to able-bodied adults with incomes below 138 percent of the federal poverty level.

30.    Under our system of federalism, the states have traditionally been viewed as laboratories of democracy, where innovative ideas can be tested on a smaller scale and, if successful, can be adopted more broadly.

31.    In recognition of that end, Section 1115 of the Social Security Act provides the Secretary of the Department of Health and Human Services (the "HHS Secretary") with broad authority to waive Medicaid requirements.

32.    More specifically, the HHS Secretary can waive Medicaid requirements for a state "[i]n the case of any experimental, pilot, or demonstration project which, in the judgment of the Secretary, is likely to assist in promoting the objectives of . . . [Medicaid]." 42 U.S.C. § 1315(a)(1). Such a waiver is commonly referred to as a Section 1115 waiver.

33.    The HHS Secretary, under his waiver authority, also may treat the state's costs of the experimental, pilot, or demonstration project that otherwise would not be reimbursable Medicaid expenditures as "expenditures under the State plan" that therefore are subject to federal reimbursement. 42 U.S.C. § 1315(a)(2).

7

**Governor Bevin's Kentucky HEALTH Proposal**

34.    Governor Bevin publicly announced Kentucky's proposed Section 1115 waiver application, known as Kentucky Helping to Engage and Achieve Long Term Health ("Kentucky HEALTH"), on June 22, 2016. The same day, public notice was provided for a 30-day public comment period. In response to the volume of comments that were submitted on the final day of the comment period, the Commonwealth extended the comment period until August 14, 2016. This extension allowed all of the comments, even those that were made after the initial deadline, to be incorporated and allowed any individual who was unable to comment previously the opportunity to do so.

35.    In developing Kentucky HEALTH, the Commonwealth clearly had a robust public comment process, which included three public hearings and an extended comment period, to ensure that every Kentuckian who wanted to provide input was fully heard. All told, the Commonwealth received nearly 1,350 comments, the most compelling of which were addressed in Kentucky HEALTH.

36.    On August 24, 2016, Governor Bevin submitted Kentucky's proposed Section 1115 waiver to the HHS Secretary. A copy of Kentucky's August 2016 waiver application, which is fully incorporated herein, is attached as Exhibit A.

37.    The Centers for Medicare and Medicaid Services ("CMS") at the Department for Health and Human Services ("HHS") provided a public comment period on the initial Kentucky HEALTH submission, which received over 1,800 comments.

8

38.     On July 3, 2017, the Commonwealth modified its initial Kentucky HEALTH application. A copy of this modified proposal, which is fully incorporated herein, is attached as Exhibit B.

39.     Both the Commonwealth and CMS solicited and received comments from the public on the Commonwealth's revised Kentucky HEALTH submission.

40.     After receipt of the revised waiver application, CMS conducted a careful, comprehensive review of the revised proposal and spent many months negotiating the Special Terms and Conditions that govern the implementation, operation, and evaluation of Kentucky HEALTH.

### Kentucky HEALTH's Approval

41.     On January 12, 2018, CMS notified the Commonwealth that Kentucky HEALTH was approved. A copy of this approval, which is fully incorporated herein, is attached as Exhibit C.

42.     The same day, Governor Bevin issued an executive order regarding expanded Medicaid and Kentucky HEALTH, which is attached as Exhibit D and is fully incorporated herein. This executive order states that Kentucky HEALTH seeks "to modify [the Commonwealth's] Medicaid expansion program in order to empower and incentivize individuals to improve their health outcomes, ameliorate their socioeconomic standing, and gain employer sponsored coverage or other commercial health insurance coverage while simultaneously ensuring the program's long-term fiscal sustainability."

43.     Governor Bevin's executive order also explains the absolute necessity of Kentucky HEALTH: "[T]he Commonwealth will not be able to afford to continue to

operate its Medicaid expansion program as currently designed in the event any one or more of the components of Kentucky's Section 1115 Waiver and the accompanying Special Terms and Conditions are prevented by judicial action from being implemented within the demonstration period set forth in the Special Terms and Conditions."

44.     Governor Bevin thus directed that if any aspect of Kentucky HEALTH is permanently enjoined by a court of competent jurisdiction, with all appeals being exhausted, the applicable state officials "are hereby directed to take the necessary actions to terminate Kentucky's Medicaid expansion . . . ."

45.     Because Kentucky adopted expanded Medicaid by unilateral executive action rather than legislative action, Kentucky's Medicaid expansion can likewise be undone by Governor Bevin's executive order.

46.     In approving Kentucky HEALTH, CMS "examined whether the demonstration was likely to assist in improving health outcomes; whether it would address behavioral and social factors that influence health outcomes; whether it would incentivize beneficiaries to engage in their own health care and achieve better health outcomes; and whether it would familiarize beneficiaries with a benefit design that is typical of what they may encounter in the commercial market and thereby facilitate smoother beneficiary transition to commercial coverage."

47.     Based upon its review of Kentucky HEALTH, CMS determined that the program "is likely to promote Medicaid objectives, and that the waivers and expenditure authorities sought are necessary and appropriate to carry out the demonstration."

48.     More specifically, CMS concluded that Kentucky HEALTH "is likely to assist in improving health outcomes," "is likely to strengthen engagement by beneficiaries in their personal health care plan," is likely to "provide incentives for responsible decision-making," and "will remove potential obstacles to a successful beneficiary transition to commercial coverage."

49.     Kentucky HEALTH contains numerous innovative provisions, all of which are likely to promote the objectives of Medicaid.

50.     Kentucky HEALTH includes community-engagement requirements for Medicaid eligibility, with exemptions for various groups, including former foster care youth, pregnant women, primary caregivers of a dependent (one per household), beneficiaries considered medically frail, beneficiaries diagnosed with an acute medical condition that would prevent them from complying with the requirements, and full-time students.

51.     Under Kentucky HEALTH's community-engagement requirements, to be eligible for Medicaid, non-exempt beneficiaries must complete 80 hours per month of community-engagement activities, such as employment, education, job skills training, and community service.

52.     In approving this aspect of Kentucky HEALTH, CMS concluded that it "is designed to encourage beneficiaries to obtain employment and/or undertake other community engagement activities that research has shown to be correlated with improved health and wellness." CMS continued: "In addition to promoting improved health outcomes for Kentucky HEALTH beneficiaries by encouraging and supporting

11

employment and other community engagement activities, the demonstration may also promote individual independence and reduce reliance on public assistance by creating incentives for individuals to obtain and maintain coverage through private, employer-sponsored insurance."

53.     Kentucky HEALTH also requires non-exempt enrollees to pay very modest premiums. In this respect, Kentucky HEALTH works similarly to insurance products sold on the commercial market—where enrollees pay premiums. With respect to the premium requirement, CMS concluded that "[i]n order to ensure continuity of care, which is important for improving health outcomes, Kentucky HEALTH seeks to provide beneficiaries the tools to successfully utilize commercial market health insurance, thereby removing potential obstacles to a successful transition from Medicaid to commercial coverage."

54.     Kentucky HEALTH also provides for rewards deductions for enrollees who use emergency rooms for non-emergency conditions, which is intended to dissuade this behavior. This is accomplished by deducting specified amounts from an enrollee's *My Rewards* account, a rewards account that Kentucky HEALTH uses to incentivize healthy behavior.

55.     Kentucky HEALTH also requires non-exempt enrollees to participate in the redetermination process for Medicaid eligibility. A failure to participate in the redetermination process results in Medicaid non-eligibility for a specified period. CMS determined that the redetermination requirement "is likely to support the objectives of Medicaid to the extent that it prepares individuals for a smooth transition to commercial

health insurance coverage and ensures that resources are preserved for individuals who meet eligibility requirements."

56.     Kentucky HEALTH also provides for non-retroactive Medicaid coverage for non-exempt enrollees. That is to say, Medicaid coverage begins at the time of enrollment and is not retroactive to a past date. CMS explained that "the approval of the waiver of retroactive eligibility encourages beneficiaries to obtain and maintain health coverage, even when healthy. This is intended to increase continuity of care by reducing gaps in coverage when beneficiaries churn on and off Medicaid or sign up for Medicaid only when sick."

57.     Kentucky HEALTH also limits the use under Medicaid of non-emergency medical transportation for non-exempt enrollees. In seeking a waiver of this Medicaid requirement, the Commonwealth explained that it is "consistent with the goal of offering a commercial market experience."

**Litigation About Kentucky HEALTH Ensues**

58.     On January 24, 2018, sixteen Kentucky residents, who are the Defendants in this action, filed a putative class-action lawsuit against the Secretary of HHS, the Administrator of CMS, the Principal Deputy Administrator of CMS, the Director of the Center for Medicaid and CHIP Services, HHS, and CMS (the "D.C. Defendants").

59.     The lawsuit was not filed in Kentucky, but instead in the United States District Court for the District of Columbia, Case No. 1:18-cv-00152 (the aforementioned D.C. Action).

13

60.     The lawsuit alleges that Kentucky HEALTH violates the Social Security Act, the Administrative Procedure Act, and the United States Constitution. A copy of the complaint in the D.C. Action is attached as Exhibit E.

61.     On February 9, 2018, the D.C. Defendants moved to transfer the case to the United States District Court for the Eastern District of Kentucky primarily because "the interests of Kentucky and its residents, including the thousands of Kentucky Medicaid recipients who are putative class members and who will be affected by Kentucky HEALTH, outweigh plaintiffs' counsel's choice of forum in the District of Columbia." The D.C. Defendants further noted that "nearly every other case for the past fifty years challenging a state-initiated Section 1115 demonstration project was originally filed in the state in which the project was to be implemented." A copy of the D.C. Defendants' motion to transfer is attached as Exhibit F.

62.     Even though Kentucky HEALTH was created in Kentucky and will be administered in Kentucky by Kentucky agencies and officials to benefit Kentucky Medicaid recipients, the named plaintiffs who brought the D.C. Action on behalf of a putative class of Kentucky Medicaid recipients chose not to sue the Commonwealth of Kentucky or any of its agencies or officials.

63.     Governor Bevin, Secretary Brinkman, and Commissioner Miller, however, have a substantial controversy with, and legal interests that are adverse to, the named Kentucky residents who brought the D.C. Action, who are the Defendants here. In particular, those Kentucky residents, who allege that they will be affected by Kentucky HEALTH, have asked a court to declare Kentucky HEALTH null and void and enjoin it

14

as a violation of the Social Security Act, the Administrative Procedure Act, and the United States Constitution. And they have asked the court to grant this relief without the Commonwealth as a party.

64. Governor Bevin, Secretary Brinkman, and Commissioner Miller have expended significant time and effort creating Kentucky HEALTH, and they intend to implement it in short order.

65. Furthermore, if the named Kentucky residents who brought the D.C. Action are ultimately successful in permanently enjoining any part of Kentucky HEALTH in a court of competent jurisdiction, Governor Bevin has directed that the Commonwealth will withdraw entirely from participating in the Medicaid expansion.

66. The substantial controversy between Governor Bevin, Secretary Brinkman, and Commissioner Miller and the named Kentucky residents who brought the D.C. Action, who are the Defendants in this action, is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

## COUNT I

67. The Plaintiffs incorporate by reference Paragraphs 1 through 66 of this Complaint.

68. The named Kentucky residents who brought the D.C. Action have alleged that Kentucky HEALTH violates the Social Security Act and the Administrative Procedure Act.

69. An actual case or controversy exists between the named Kentucky residents who brought the D.C. Action, who are the Defendants in this action, and the Plaintiffs

regarding whether Kentucky HEALTH violates the Social Security Act and the Administrative Procedure Act.

70.     The Plaintiffs seek a declaration that Kentucky HEALTH does not violate the Social Security Act and the Administrative Procedure Act and is within the scope of the HHS Secretary's Section 1115 waiver authority.

71.     The Plaintiffs seek a declaration that Kentucky HEALTH, as a whole, is within the HHS Secretary's Section 1115 waiver authority.

72.     The Plaintiffs seek a declaration that Kentucky HEALTH's community-engagement requirements are within the scope of the HHS Secretary's Section 1115 waiver authority.

73.     The Plaintiffs seek a declaration that Kentucky HEALTH's premium requirements are within the scope of the HHS Secretary's Section 1115 waiver authority.

74.     The Plaintiffs seek a declaration that Kentucky HEALTH's reward deductions for non-emergency use of the emergency room are within the scope of the HHS Secretary's Section 1115 waiver authority.

75.     The Plaintiffs seek a declaration that Kentucky HEALTH's redetermination requirements are within the scope of the HHS Secretary's Section 1115 waiver authority.

76.     The Plaintiffs seek a declaration that Kentucky HEALTH's non-retroactive coverage provisions are within the scope of the HHS Secretary's Section 1115 waiver authority.

77.     The Plaintiffs seek a declaration that Kentucky HEALTH's provisions regarding non-emergency medical transportation are within the scope of the HHS Secretary's Section 1115 waiver authority.

## COUNT II

78.     The Plaintiffs incorporate by reference Paragraphs 1 through 77 of this Complaint.

79.     The named Kentucky residents who brought the D.C. Action have alleged that the approval of Kentucky HEALTH otherwise violates the Medicaid Act, was arbitrary and capricious and an abuse of discretion, and ran counter to the evidence in the record.

80.     An actual case or controversy exists between the named Kentucky residents who brought the D.C. Action, who are the Defendants in this action, and the Plaintiffs about whether the approval of Kentucky HEALTH otherwise violates the Medicaid Act, was arbitrary and capricious and an abuse of discretion, and ran counter to the evidence in the record.

81.     The Plaintiffs seek a declaration that the HHS Secretary's approval of Kentucky HEALTH otherwise complied with the Medicaid Act, was not arbitrary or capricious, was not an abuse of discretion, and was supported by the evidence in the record.

## COUNT III

82.     The Plaintiffs incorporate by reference herein Paragraphs 1 through 81 of this Complaint.

17

83.    The named Kentucky residents who brought the D.C. Action have alleged that the approval of Kentucky HEALTH violates the Take Care Clause of the United States Constitution.

84.    An actual case or controversy exists between the named Kentucky residents who brought the D.C. Action, who are the Defendants in this action, and the Plaintiffs about whether a claim that the Take Care Clause of the United States Constitution has been violated is justiciable and, in the alternative, whether the approval of Kentucky HEALTH violates the Take Care Clause.

85.    The Plaintiffs seek a declaration that any claim by the Defendants under the Take Care Clause of the United States Constitution is not justiciable and, in the alternative, a declaration that the HHS Secretary's approval of Kentucky HEALTH does not violate the Take Care Clause.

## DEMAND FOR RELIEF

WHEREFORE, the Plaintiffs demand as follows:

1)    A declaration that the HHS Secretary's approval of Kentucky HEALTH, and all of its contested provisions, does not violate the Social Security Act or the Administrative Procedure Act;

2)    A declaration that the HHS Secretary's approval of Kentucky HEALTH, and all of its contested provisions, was within the HHS Secretary's Section 1115 waiver authority;

3)    A declaration that the HHS Secretary's approval of Kentucky HEALTH, and all of its contested provisions, does not otherwise violate the Medicaid Act, was not

arbitrary or capricious, was not an abuse of discretion, and was supported by the evidence in the record;

      4)     A declaration that any claim by the Defendants under the Take Care Clause of the United States Constitution is not justiciable and, in the alternative, a declaration that the HHS Secretary's approval of Kentucky HEALTH does not violate the Take Care Clause; and

      5)     Any and all other relief to which the Plaintiffs may be entitled.

<div style="margin-left:40%">

Respectfully Submitted,

/s/ M. Stephen Pitt_____
M. Stephen Pitt
S. Chad Meredith
Matthew F. Kuhn
Office of the Governor
700 Capital Avenue, Suite 101
Frankfort, Kentucky 40601
(502) 564-2611
Steve.Pitt@ky.gov
Chad.Meredith@ky.gov
Matt.Kuhn@ky.gov

Johann Herklotz
Catherine York
Matthew H. Kleinert
Cabinet for Health and Family Services
Office of Legal Services
275 East Main Street 5W-B
Frankfort, Kentucky 40621
(502) 564-7042
Hans.Herklotz@ky.gov
Catherine.York@ky.gov
Matthew.Kleinert@ky.gov

*Counsel for the Plaintiffs*

</div>