UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| MATTHEW G. BEVIN, *ex rel* | ) | |
| COMMONWEALTH OF KENTUCKY, | ) | |
| *et al.*, | ) | Civil No. 3:18-cv-00008-GFVT |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **MEMORANDUM OPINION** |
| V. | ) | **&** |
| | ) | **ORDER** |
| RONNIE MAURICE STEWART, *et al.*, | ) | |
| | ) | |
| Defendants. | | |

*** *** *** ***

This matter is before the Court on Defendants' Motion to Dismiss.  [R. 25.]  Defendants, sixteen Kentucky residents who participate in expanded Medicaid, seek dismissal of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) on the grounds that Plaintiffs lack standing to assert the claims set forth in the Complaint.  Alternatively, Defendants move to dismiss the Complaint for failure to state a claim for which relief can be granted, pursuant to Rule 12(b)(6).  Further, Defendants ask the Court to exercise its discretion and dismiss the Complaint under the first-to-file rule, stating any litigation under this Complaint would be duplicative to an action brought initially in the United States District Court for the District of Columbia.  The Court, having reviewed the record and the pleadings therein, will, for the reasons stated below, **GRANT** Defendants' Motion to Dismiss.

**I**

In 2014, under a previous administration, the Commonwealth of Kentucky opted to participate in expanded Medicaid, which had been authorized by the Patient Protection and Affordable Care Act of 2010.  [R. 1 at 6-7.]  In June 2016, under the current administration, the Commonwealth announced it would seek a Section 1115 waiver from the United States Secretary of Health and Human Services in order to implement Kentucky HEALTH.  [*Id.* at 8.] Plaintiffs claim "Kentucky HEALTH contains numerous innovative provisions, all of which are likely to promote the objectives of Medicaid."  [*Id.* at 11.]  Kentucky's initial Section 1115 waiver application was submitted to the HHS Secretary on August 24, 2016, and modified in July 2017.  [*Id.* at 8-9.]  On January 12, 2018, Kentucky received notice that its Section 1115 waiver had been approved.  [*Id.* at 9.]

On January 24, 2018, sixteen Kentucky Medicaid recipients brought an action in the United States District Court for the District of Columbia (D.C. Action) challenging the approved Section 1115 waiver.  [R. 1 at 13; R. 25-1 at 2-3.]  The individuals brought the suit both individually and on behalf of all Kentucky residents enrolled in the Kentucky Medicaid program on or after January 12, 2018.  [R. 1-5 at 10.]  The Kentucky Medicaid recipients claimed the Secretary's waiver was unconstitutionally granted and that it violated the Administrative Procedure Act, the Social Security Act, and the Medicaid Act.  [*See generally* R. 1-5.] Importantly, they did not claim that Kentucky HEALTH or its provisions were unconstitutional. [*See id.*]  The Commonwealth of Kentucky initially was not named as a party to the D.C. Action but later intervened as a defendant.  [*See* R. 35 at 6.]  However, before Kentucky intervened in the D.C. Action, it filed this suit in the Eastern District of Kentucky on February 19, 2018.

2

In this action for a Declaratory Judgment, the Commonwealth of Kentucky has brought suit against the same sixteen Kentucky Medicaid recipients that initiated the D.C. Action against federal actors.  [*See* R. 1.]  Count One of the Complaint alleges that "[t]he named Kentucky residents who brought the D.C. Action have alleged that Kentucky HEALTH violates the Social Security Act and the Administrative Procedure Act."  [*Id.* at 15.]  Count Two states that the same individuals claim, again in the D.C. Action, that "the approval of Kentucky HEALTH otherwise violates the Medicaid Act, was arbitrary and capricious and an abuse of discretion, and ran counter to the evidence in the record."  [*Id.* at 17.]  Count Three indicates that that the D.C. Plaintiffs "alleged that the approval of Kentucky HEALTH violates the Take Care Clause of the United States Constitution."  [*Id.* at 18.]  As to each of the counts, the Commonwealth claims an actual case or controversy exists as to the veracity of those claims being litigated in the D.C. Action.  [*Id.* at 15-18.]

The D.C. Court determined in the D.C. Action that the Secretary acted arbitrarily and capriciously in granting the Kentucky HEALTH waiver, and the Court remanded the matter to HHS.  *See* Memorandum Opinion, *Stewart v. Azar II*, No. 1:18-cv-00152-JEB (D.D.C. June 29, 2018, ECF No. 74).  That ruling effectively forces the Secretary to revisit its obligations under the Administrative Procedure Act regarding the Kentucky HEALTH waiver; thus, there remains at least some possibility that the waiver—or some version of it—could still be granted.  The result of the D.C. Action, however, does not change this Court's standing analysis, which follows.

The Commonwealth has brought this action seeking declarations that Kentucky HEALTH, and its individual provisions, do not violate the Social Security Act or the

Administrative Procedure Act, and that the Kentucky HEALTH waiver is within the HHS Secretary's Section 1115 waiver authority. [*Id.* at 16.] Additionally, The Commonwealth asks this Court to declare "that the HHS Secretary's approval of Kentucky HEATH, and all of its contested provisions," complied with legal mandates. [*Id.* at 15-19.] Defendants now move to dismiss this action for a lack of standing under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Rule 12(b)(6). [R. 25.] Because Plaintiffs lack Article III standing, this case will be dismissed.

## II

When a defendant's motion to dismiss raises the question of subject-matter jurisdiction, the plaintiff "bears the burden of proving jurisdiction in order to survive the motion." *Mich. S. R.R. Co. Branch & St. Joseph Counties Rail Users Ass'n*, 287 F.3d 568, 573 (6th Cir. 2002). "Specifically, the plaintiff must show that the complaint 'alleges a claim under federal law, and that the claim is substantial.'" *Id.* (quoting *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996)). A plaintiff may survive the motion "by showing 'any arguable basis in law' for the claims set forth in the complaint." *Id.*

Rule 12(b)(1) motions "generally come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Prods., Inc., v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). A facial attack "questions merely the sufficiency of the pleading. *Id.* When a motion raises a facial attack, the Court must accept all the "allegations in the complaint as true," and "if those allegations establish federal claims, jurisdiction exists." *Id.* On the other hand, a factual attack is "not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir.

4

1994).  When the 12(b)(1) motion factually attacks subject matter jurisdiction, "no presumptive truthfulness applies to the allegations," and the court "must weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist."  *Gentek Bldg. Prods., Inc.*, 492 F.3d at 330.  A challenge to a plaintiff's standing is a facial attack.  *See Gaylor v. Hamilton Crossing CMBS*, 582 Fed. App'x 576, 579 (6th Cir. 2014).  Therefore, the Court must accept the allegations of the Commonwealth's Complaint as true.  *Gentek Bldg. Prods., Inc.*, 492 F.3d at 330

   "Standing is a threshold question in every federal case," *Coal Operators & Assocs., Inc. v. Babbitt*, 291 F.3d 912, 915 (6th Cir. 2002) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).  Article III's "irreducible constitutional minimum" of standing has three elements: (1) "the plaintiff must have suffered an 'injury-in-fact' – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual an imminent, not conjectural and hypothetical"; (2) "there must be a causal connection between the injury and the conduct complained of"; and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations omitted).  As to the second prong, "the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court."  *Id.* (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41-42 (1976)).  *See also White v. United States*, 601 F.3d 545, 551 (6th Cir. 2010).  "The party invoking federal jurisdiction bears the burden of establishing these three elements."  *Lujan*, 504 U.S. at 561.

Here, Defendants effectively challenge Plaintiffs' standing on all three elements. Defendants argue the Commonwealth lacks standing because "Defendants have not caused the Commonwealth any cognizable harm," and because Plaintiffs cannot "establish that any alleged injury it might suffer is fairly traceable to any alleged unlawful conduct by the Defendants." [R. 25 at 1.] Additionally, Defendants opine that any alleged injury suffered by the Plaintiffs cannot be redressed through this action. [R. 25-1 at 6.] The Court will take each element in order.

**A**

Defendants first argue that Plaintiffs have not suffered an invasion of a legally protected interest and, even if they do allege an injury, that injury is neither concrete and particularized nor actual and imminent. Defendants assert that "the Commonwealth's mere disagreement with Defendants' arguments in the D.C. Action cannot establish a constitutionally protected interest." [*Id.* at 7.] Moreover, Plaintiffs "cannot claim to have a *legally protected* interest in insulating the Secretary's grant of a federal waiver for Kentucky HEALTH from judicial review under the Constitution or the APA." [*Id.* at 7-8.] According to Defendants, the Complaint only alleges a possible future injury, which is "too speculative to satisfy the well-established requirement that threatened injury must be certainly impending." [*Id.* at 8 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013)).] "The only injury the Complaint can allege is the possible invalidation of the federal waiver . . . in the D.C. Action." [R. 25-1 at 8.] Defendants cite the United States Supreme Court's opinion in *Whitmore v. Arkansas*, 495 U.S. 149 (1990), to support its argument that, "[w]hen the potential outcome of a case is the only arguable source of injury, 'there is no amount of evidence that potentially c[an] establish that [the plaintiff's] asserted future injury is real and immediate.'" [*Id.* (quoting *Whitmore*, 495 U.S. at 160).]

6

Plaintiffs respond by stating that, in cases invoking the Declaratory Judgment Act, the three-element standing analysis is "reduce[d] to whether 'the parties have "adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment" even though the injury-in-fact has yet to be completed.'"  [R. 35 at 9 (quoting *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 280 (6th Cir. 1997)).]  The Commonwealth seems to suggest, without explicitly stating as much, that the injury it has or will sustain would only result if the Commonwealth is prevented from implementing Kentucky HEALTH.  [*See* R. 35 at 9-10.]  "[W]ithout Kentucky HEALTH, the Commonwealth will be forced, due to budgetary constraints, to 'un-expand' from expanded Medicaid."  [*Id.* at 10.]  Plaintiffs later argue, though, that,

> [t]he injury alleged by Plaintiffs is not that the D.C. Action could undo Kentucky HEALTH, although that certainly would injure the Commonwealth and its citizens. Rather, Plaintiffs injury-in-fact is that the Kentucky Defendants have taken concrete steps to invalidate and enjoin Kentucky HEALTH, a program that the Commonwealth developed, is currently implementing, and soon will be enforcing.

[*Id.* at 12.]  In rebutting Defendants' speculative-harm argument, Plaintiffs state that they need only show "actual present harm or a significant possibility of future harm," because they brought their action under the Declaratory Judgment Act.  [*Id.* (quoting *Magaw*, 132 F.3d at 279).]

While it is true that "[d]eclaratory judgments are typically sought before a completed 'injury-in-fact' has occurred," the party claiming harm still must allege some "significant possibility of future harm." *Magaw*, 132 F.3d at 279.  Additionally, any declaration sought by a plaintiff "must be limited to the resolution of an 'actual controversy.'"  *Id.*  Here, Plaintiffs explicitly argue that "the Kentucky Defendants have taken concrete steps to invalidate and enjoin Kentucky Health."  [R. 35 at 12.]  By "concrete steps," the Court can only presume that the Commonwealth means the Kentucky Medicaid recipients initiated the D.C. Action.  In fact,

7

though, the Kentucky Defendants brought the D.C. Action challenging not Kentucky HEALTH or its provisions but the Secretary's conduct in approving the waiver that would allow the Commonwealth to implement Kentucky HEALTH.  [*See generally* R. 1-5.]  That the Kentucky Defendants brought such an action does not establish a "significant possibility of future harm." And, while the Commonwealth posits that it would be forced to "un-expand" from Medicaid if Kentucky HEALTH is prevented, that conclusory statement implying an economic injury, without more, does not explain how the Commonwealth would be injured.

**B**

Even assuming that the Commonwealth suitably alleges an injury-in-fact, the Commonwealth's causation argument fails.  According to Defendants, "[e]ven if the Commonwealth could show some concrete harm traceable to the D.C. Action . . ., any interest in implementing a waiver that [might be] declared unlawful is not a legally protected interest."  [R. 36 at 6.]  Defendants claim their initiation of the D.C. Action "neither repealed Kentucky HEALTH nor 'forced' the Commonwealth to do anything," and opine that any alleged future harm would be traceable to the entity that might invalidate the Secretary's waiver.  [*Id.* at 7; R. 25-1 at 9.]  The essence of Defendants argument is that the intervening action of the D.C. District Court, if it ultimately invalidates the Secretary's waiver, would break any chain of causation that existed between the Commonwealth's alleged future economic injury and the Kentucky Medicaid recipients' conduct.

In response to Defendants traceability arguments, Plaintiffs state only that "the success of this lawsuit in protecting Kentucky HEALTH does not depend upon what occurs in the D.C. Action.  This action and the D.C. [A]ction stand on equal footing.  One is not subordinate to the

8

other at this stage." [R. 35 at 13.] The Commonwealth attempts to distinguish the cases cited for support by the Defendants [*see id.* at 13-15], but offers no authority in support of its position that any future economic harm it might suffer would be traceable to Defendants. The Commonwealth states that "[i]n its motion to intervene, the Commonwealth cited a wealth of case law allowing a sovereign state to intervene as a right into litigation challenging federal action or decision making that affects the state intervenor," and that Defendants make no attempt to rebut that case law here. [*Id.* at 15.] However, precedent that supports the Commonwealth intervening as a defendant in a suit challenging federal action or decision making does not automatically confer Article III standing to the Commonwealth as a plaintiff to bring an independent suit against those challenging the federal action or decision making.

As *Lujan* counseled, "the injury has to be 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" *Lujan*, 504 U.S. at 560-61. It is clear that the United States District Court for the District of Columbia is not before this Court as a party in this suit. It is also clear that if the Commonwealth ever suffers any economic injury as a result of not being able to implement Kentucky HEALTH, that injury will be traceable to whatever entity last affected its implementation, not these Defendants. The Court agrees with Defendants that there is no clear traceability between these Defendants' conduct and any future harm the Commonwealth claims will occur. Furthermore, even assuming the D.C. Action ultimately runs its full course and prevents the Commonwealth from implementing Kentucky HEALTH, any action thereafter concerning expanded Medicaid in Kentucky would be based on a policy decision by the Commonwealth. Such a decision might cause injury to the Commonwealth, at least the pleadings suggest as much [*see* R. 35 at 10-11],

but that injury would be traceable to the Commonwealth's intervening policy decision and, again, not a result of any conduct by these Defendants.

C

Lastly, related to standing, Defendants attack standing's redressability requirement.  [*See* R. 25-1 at 10.]  "[P]revailing against these Defendants will not redress the Commonwealth's supposed potential injury, because that injury, if it occurs at all, will not be caused by the Defendants."  [*Id.*]  In its argument, Defendants acknowledge that causation and redressability are often linked, and "if a plaintiff can demonstrate that his injuries were caused by the defendant, the courts are in a position to redress the situation."  [*Id.* (quoting *Kardules v. City of Columbus*, 95 F.3d 1335, 1352 (6th Cir. 1996)).]  In support of their redressability argument, Defendants point to the fact that Plaintiffs are not seeking to have the D.C. Action dismissed.  [R. 25-1 at 10.]  The D.C. District Court therefore will be free to invalidate the Section 1115 waiver if it so deems appropriate.  Therefore, a favorable result in this Court will not redress any of the Commonwealth's alleged injuries.  Presumably relying on the fact that causation and redressability are often considered together, and believing it suitably argued causation, the Commonwealth fails to respond to Defendants' redressability arguments.

The Commonwealth seeks, in this action, a declaratory judgment that Kentucky HEALTH and all of its provisions comply with statutory mandates and that Kentucky HEALTH falls within the HHS Secretary's waiver authority.  [R. 1 at 16-19.]  It further seeks a declaration that the HHS Secretary's approval of the Kentucky HEALTH waiver complied with the Medicaid Act and "was not arbitrary and capricious, was not an abuse of discretion, and was supported by the evidence in the record."  [*Id.* at 18-19.]  Lastly, the Commonwealth seeks a

10

declaration that Kentucky HEALTH and the Secretary's approval of the Kentucky HEALTH waiver was otherwise constitutional.  [*Id.* at 19.]  Comparatively, in the D.C. Action, the Kentucky Medicaid recipients seek a declaration, in relevant part, that the HHS Secretary's "approval of the Kentucky HEALTH waiver application violates the Administrative Procedure Act, the Social Security Act, and the United States Constitution. . . ."  [R. 1-5 at 79.]  Because the declarations sought by the parties in the two independent actions are at polar opposites from each other, a favorable opinion for the Commonwealth in this action is not likely to redress the injury it supposedly alleged, that is "the Kentucky Defendants . . . concrete steps to invalidate and enjoin Kentucky HEALTH. . . ."  [*See* R. 35 at 12.]

Article III's "irreducible constitutional minimum" of standing has three elements: injury, causation, and redressability.  Because the Commonwealth fails to establish any of those three elements, this case will be dismissed for lack of subject matter jurisdiction.  Moreover, because the Court disposes of this case on Defendants' Rule 12(b)(1) motion, the Court need not address the merits of Defendants' Rule 12(b)(6) arguments.

### III

Not all disputes are capable of federal judicial review.  Federal courts are limited in their jurisdiction, and they can only hear cases where the plaintiff can establish jurisdiction.  Here, the Commonwealth failed to do so.  Moreover, the Commonwealth has intervened in the D.C. Action, which, based on the Commonwealth's articulation of its filings in that case [*see* R. 35 at 17], allows the Commonwealth to protect its interests in implementing Kentucky HEALTH.  In fact, Plaintiffs acknowledge that the Commonwealth intervened in the D.C. Action "to 'fully participate as a defendant. . . .'"  [*Id.*]  To fully participate as a defendant means a defendant is

11

free to file a counterclaim against any plaintiff. [*See* Fed. R. Civ. P. 13.] The Commonwealth, therefore, could, but was not required to, protect its interests and seek the same declaratory relief it seeks here in the D.C. Action.

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1) Defendants' Motion to Dismiss [**R. 25**] is **GRANTED;**

2) Judgment in favor of Defendants shall be entered contemporaneously herewith;

3) Kentucky Association of Health Plans, Inc.'s Motion to Intervene [**R. 4**] is **DENIED AS MOOT;** and

4) Kentucky Hospital Association's Motion to Intervene [**R. 7**] is **DENIED AS MOOT.**

This the 20th day of August, 2018.

Gregory F. Van Tatenhove
United States District Judge